IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CR-355-D
No. 5:25-CV-52-D

| | | |
|---|---|---|
| GREGORY WARREN DANIELS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On January 28, 2025, Gregory Warren Daniels ("Daniels" or "petitioner") moved pro se under 28 U.S.C. § 2255 to vacate, set aside, or correct his 180-month sentence [D.E. 81]. See [D.E. 80] 15 (commuting Daniels's 264-month sentence to 180 months' imprisonment). On March 31, 2026, the United States moved to dismiss Daniels's section 2255 motion [D.E. 88] and filed a memorandum in support [D.E. 89]. See Fed. R. Civ. P. 12(b)(6). On June 12, 2026, Daniels responded in opposition [D.E. 93]. As explained below, the court grants the United States' motion to dismiss, dismisses Daniels's section 2255 motion, and denies a certificate of appealability.

I.

On July 29, 2020, a grand jury in the Eastern District of North Carolina charged Daniels with conspiring to distribute and possess with the intent to distribute 280 grams or more of cocaine base (crack) and five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (count one) and five counts of distributing a quantity of cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1) (counts two through six). See [D.E. 1] 1–3. On February 24, 2021, with a

written plea agreement, Daniels pleaded guilty to counts one and two. See [D.E. 28]; Rule 11 Tr. [D.E. 71] 3–28.

On April 22, 2022, Daniels moved to withdraw his guilty plea to counts one and two. See [D.E. 62]. On April 29, 2022, the court denied Daniels's motion to withdraw his guilty plea and held Daniels's sentencing hearing. See [D.E. 64]; Sent'g Tr. [D.E. 72] 3–69. The court adopted the facts as set forth in the Presentence Investigation Report ("PSR") and resolved Daniels's objections. See PSR [D.E. 35]; [D.E. 64]; [D.E. 66] 1; Sent'g Tr. 54–56. The court calculated Daniels's total offense level to be 33, his criminal history category to be VI, and the advisory guideline range to be 235 to 293 months' imprisonment. See PSR ¶¶ 60–71, 73; Sent'g Tr. 56. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Daniels to 264 months' imprisonment on count one and 240 months' concurrent imprisonment to count two. See Sent'g Tr. 56–68; [D.E. 65] 3. On May 20, 2022, Daniels appealed. See [D.E. 67]. On February 7, 2024, the United States Court of Appeals for the Fourth Circuit found that Daniels's guilty plea was valid, affirmed the court's denial of Daniels's motion to withdraw his guilty plea, dismissed Daniels's appeal as to any nonfrivolous issues within the scope of the plea agreement's appellate waiver, affirmed Daniels's conviction and sentence, and remanded to correct the written judgment to conform with the orally pronounced sentence. See United States v. Daniels, No. 22-4301, 2024 WL 469292, at *1–2 (4th Cir. Feb. 7, 2024) (per curiam) (unpublished). On July 6, 2024, the court entered an amended judgment. See [D.E. 79].

On January 17, 2025, President Biden granted Daniels clemency and commuted his sentence to a term of 180 months' imprisonment. See [D.E. 80] 15. On January 28, 2025, Daniels moved to vacate, set aside, or correct his sentence under section 2255. See [D.E. 81]. On March 31, 2026, the United States moved to dismiss Daniels's section 2255 motion. See [D.E. 88].

## II.

The court lacks jurisdiction over Daniels's section 2255 motion. A live case or controversy must exist through all stages of a federal judicial proceeding. See Lewis v. Cont'1 Bank Corp., 494 U.S. 472, 477–78 (1990). A case or controversy no longer exists "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (cleaned up). The court lacks jurisdiction if there is no longer a live case or controversy. See U.S. Const. art. III, § 2; Already, 568 U.S. at 91; Powell v. McCormack, 395 U.S. 486, 496 (1969); Benson v. Warden, FCI Edgefield, 174 F.4th 348, 353 (4th Cir. 2026). A federal court may raise mootness sua sponte "at any stage of proceedings." United States v. Springer, 715 F.3d 535, 540 (4th Cir. 2013); see North Carolina v. Rice, 404 U.S. 244, 246 (1971) (per curiam).

Daniels's section 2255 motion is moot. President Biden commuted the sentence the court imposed. See [D.E. 80] 15. A commutation order "simply closes the judicial door" on a section 2255 motion because the movant is "no longer serving a judicially imposed sentence, but a presidentially commuted one." United States v. Surratt, 855 F.3d 218, 219 (4th Cir. 2017) (en banc) (Wilkinson, J., concurring); see id. at 219 (mem.) (dismissing appeal as moot); Blount v. Clarke, 890 F.3d 456, 462–63 (4th Cir. 2018) (stating that the en banc Fourth Circuit in Surratt "necessarily conclud[ed] that [it] could not disturb" the petitioner's presidentially commuted sentence); United States v. Porter, No. 7:20-CR-29, 2025 WL 2043339, at *1 (E.D.N.C. July 21, 2025) (unpublished). Thus, the court dismisses Daniels's section 2255 motion as moot.

## III.

Alternatively, if the court has jurisdiction, it grants the United States' motion to dismiss. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim

3

upon which relief can be granted" tests a petition's legal and factual sufficiency. Fed. R. Civ. P. 12(b)(6); see Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a petition's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (citation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

In reviewing a section 2255 petition, the court is not limited to the petition itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013); United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

A.

The "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (cleaned up). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lee v. United States, 582 U.S. 357, 363–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v.

4

Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001); Hill v. Lockhart, 474 U.S. 52, 57–60 (1985).

To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Daniels must plausibly allege that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984). When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. As for performance, a party must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

"Surmounting Strickland's high bar is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011) (citation omitted). "An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." Id. (cleaned up). The "standard for judging counsel's representation is a most deferential one." Id. "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." Id. "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Id. (cleaned up).

5

A person asserting an ineffective assistance of counsel claim also must show that counsel's deficient performance was prejudicial. See Strickland, 466 U.S. at 691–96. A person does so by showing that there is a "reasonable probability that, but for" the deficient performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Supreme Court based this "additional 'prejudice' requirement" on the "conclusion that 'an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 691).

In assessing prejudice, Strickland "asks whether it is 'reasonably likely' the result would have been different." Harrington, 562 U.S. at 111 (quoting Strickland, 466 U.S. at 696). Strickland "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" Harrington, 562 U.S. at 111–12 (quoting Strickland, 466 U.S. at 693, 697). "The likelihood of a different result must be substantial, not just conceivable." Id. at 112 (citation omitted).

When a defendant pleads guilty and later attacks his guilty plea, "to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (quotations omitted); see Lee, 582 U.S. at 364–65. "[S]uch an individual 'must convince the court' that such a decision 'would have been rational under the circumstances.'" United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). "Surmounting Strickland's high bar is never an easy task, and the strong societal interest in finality

6

has special force with respect to convictions based on guilty pleas." Lee, 582 U.S. at 368–69 (cleaned up).

"Requiring a showing of prejudice from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel [serves] the fundamental interest in the finality of guilty pleas . . . ." Hill, 474 U.S. at 58 (quotations omitted). "Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice." Id. (citation omitted). "The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas." Id. (citation omitted).

"[I]f a defendant alleges that he has accepted a government plea offer based on the erroneous advice of counsel, but entered that plea only after the misadvice was corrected by the trial court at the Rule 11 hearing, then he will not be able to show the necessary causal link between counsel's error and his decision to plead guilty." United States v. Mayhew, 995 F.3d 171, 179–80 (4th Cir. 2021) (cleaned up); see United States v. Yelizarov, 140 F.4th 597, 604–05 (4th Cir. 2025), cert. denied, 146 S. Ct. 345 (2025); United States v. Akande, 956 F.3d 257, 262–63 (4th Cir. 2020); United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995). "Generally, a court should dismiss a claim in a [section] 2255 motion that contradicts a petitioner's sworn statements made during a Rule 11 plea colloquy." Yelizarov, 140 F.4th at 605; see United States v. Lemaster, 403 F.3d 216, 219–22 (4th Cir. 2005).

In his section 2255 motion, Daniels argues that his counsel rendered ineffective assistance by (1) not investigating or presenting evidence about Daniels's mental health (at some unspecified time before sentencing), (2) not moving to suppress certain unidentified confessions, and (3)

7

failing to present mental health evidence and objecting to an enhancement under 21 U.S.C. § 851 during sentencing. See [D.E. 81] 4–8. The record belies Daniels's first and third arguments. When Daniels moved to withdraw his guilty plea, his counsel described Daniels's alleged medical issues, including the medications prescribed to Daniels and their effects on his cognition. See [D.E. 62] 1–3. During the motion to withdraw hearing, the court recounted Daniels's statements in his motion to withdraw his guilty plea, heard Daniels's testimony about his mental health and medication, and denied Daniels's motion under the governing standard. See Sent'g Tr. 13–53. Specifically, the court noted that Daniels sent numerous documents pro se to the court between pleading guilty and moving to withdraw his guilty plea and did not mention any issues about medication. See id. at 43–44. During the sentencing hearing (which occurred moments after the motion to withdraw hearing), the court considered that same evidence when it sentenced Daniels. See id. at 61–64. Daniels does not plausibly allege deficient performance or prejudice concerning mental health evidence, and his contentions contradict his sworn statements made during the Rule 11 proceeding. See Yelizarov, 140 F.4th at 605; Lemaster, 403 F.3d at 219–22; cf. [D.E. 81] 16–18.

As for Daniels's contention about an enhancement under 21 U.S.C. § 851, Daniels was not sentenced under an enhanced penalty. Daniels faced a statutory minimum sentence of 10 years' imprisonment on count one, and a statutory maximum sentence of 20 years' imprisonment on count two, which reflect the unenhanced penalties under both statutes. Cf. PSR ¶ 72; 21 U.S.C. § 841(b)(1)(A), (b)(1)(C). Thus, Daniels does not plausibly allege ineffective assistance of counsel in grounds one and three.

As for Daniels's second ground of ineffective assistance, Daniels's motion states "Two/Three Interviews of confessions" as the only supporting fact and does not explain the ground

8

further in his other supporting documents. [D.E. 81] 5; cf. [D.E. 93] 1–3. Daniels's conclusory allegations do not plausibly allege ineffective assistance of counsel. See Dyess, 730 F.3d at 359 ("[V]ague and conclusory allegations contained in a [section] 2255 petition may be disposed of without further investigation by the [d]istrict [c]ourt."); United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000). Thus, Daniels does not plausibly allege ineffective assistance of counsel in grounds one, two, and three.

In ground four, Daniels alleges that a federal agent told him that he would receive a lesser sentence for cooperating. See [D.E. 81] 8. The Fourth Circuit rejected this claim when Daniels raised it on direct appeal. See Daniels, 2024 WL 469292, at *1. Daniels cannot relitigate the claim through a section 2255 motion. See Fernandez v. United States, 146 S. Ct. 1292, 1300 (2026) ("Claims that have already been raised and rejected on direct review typically cannot be relitigated in [section] 2255 motions."); Kaufman v. United States, 394 U.S. 217, 227 n.8 (1969). And in any event, the record belies Daniels's contention. See Daniels, 2024 WL 469292, at *1. Thus, Daniels's fourth ground fails.

B.

After reviewing the claims presented in Daniels's motion, the court finds that reasonable jurists would not find the treatment of Daniels's claims debatable or wrong, and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

9

IV.

In sum, the court GRANTS respondent's motion to dismiss [D.E. 88], DISMISSES

petitioner's section 2255 motion [D.E. 81], and DENIES a certificate of appealability.

SO ORDERED. This 16 day of July, 2026.

JAMES C. DEVER III
United States District Judge

Case 5:20-cr-00355-D    Document 94    Filed 07/16/26    Page 10 of 10